Earl William **HARDING**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 19215.

United States Court of Appeals
Ninth Circuit.

Aug. 11, 1964.

R. Edward Brown, Hollywood, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief, Criminal Section, and Ronald S. Morrow, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES and JERTBERG, Circuit Judges, and McNICHOLS, District Judge.

JERTBERG, Circuit Judge.

Following trial to a jury, the appellant was convicted on Count Two of a three count indictment which charged a violation of 18 U.S.C. § 474, which provides in pertinent part as follows:

"Whoever has in his control, custody, or possession any plate, stone, or other thing in any manner made after or in the similitude of any plate, stone, or other thing, from which any such obligation or other security has been printed, with in-

---

tent to use such plate, stone, or other thing, or to suffer the same to be used in forging or counterfeiting any such obligation or other security, or any part thereof; * * * Shall be fined not more than $5,000 or imprisoned for not more than fifteen years, or both."

Count One of the indictment which charged appellant under 18 U.S.C. § 2, with aiding and abetting a violation of 18 U.S.C. § 474, and Count Three which charged a violation of § 474 in that appellant sold and transferred four negatives, impressions in the likeness of Federal Reserve Notes, were dismissed on order of the District Court.

Count Two charged appellant:

"[h]ad in his possession, custody and control 4 negatives made after the similitude of $10.00 and $20.00 Federal Reserve Notes with intent to suffer the same to be used in forging and counterfeiting such obligation and security."

The essential facts, stated in the light most favorable to the government, may be briefly stated:

On July 25, 1963, appellant, who had previously been convicted of a felony, showed negatives of United States Federal Reserve Notes to one Robert Smart. It appears that Smart had previously been convicted of two felony convictions and at the time was on parole from a State Prison of the State of California. It further appears that appellant and Smart were acquainted, having previously been incarcerated in the same penitentiary. On the day in question Smart was acting as an undercover informant of the Secret Service of the United States. Appellant told Smart that he needed $5,000.00 to obtain paper, presses and a place to print the counterfeit monies that could be made from the negatives. Smart told appellant that he thought he knew someone who had the money to invest. On July 26, 1963, Smart told appellant that he had contacted a friend of his named Ray Moore, a procurer of women, who was interested in providing money

for the counterfeiting project. Smart then met with the Secret Service Agents and arranged for a meeting at Smart's home. Smart told appellant that Ray Moore would meet them at Smart's home that night, and that Moore would have to see some kind of tangible proof that appellant had something to sell. On the evening of July 26, 1963, appellant and Smart arrived at Smart's residence and there met Thomas Behl, an agent of the Secret Service. Agent Behl was introduced to appellant as "Ray Moore." Inside the residence and in the presence of Smart and Behl, appellant showed Agent Behl and Smart, four negatives of $10.00 and $20.00 Federal Reserve Notes. Conversations were had about the means of raising money and how much Agent Behl would get for putting up $5,000.00. Appellant placed the negatives in an envelope on the kitchen table. On leaving the residence, Smart picked up the package of negatives and the three men left together. On arriving outside of the house, the negatives were taken from Smart's possession and appellant was arrested.

Following appellant's arrest he made incriminating statements relating to the counterfeiting proposal.

The witnesses testifying on behalf of the government were Smart, Thomas J. Behl, Mr. Bradford, handwriting expert, Mr. Horn, Secret Service agent who arrested appellant and who took the negatives from the possession of Smart, and Mr. Boggs, Secret Service agent who testified concerning printing machines often used in the counterfeiting business. The only witness presented on behalf of appellant was the appellant, himself, who contradicted most of the testimony given by the witness, Smart, and most of the testimony of Agent Behl.

The appellant assigns as grounds for reversal many alleged errors occurring during the course of the trial. We will discuss only one which we believe requires a reversal of the judgment of conviction. At the conclusion of its instructions to the jury, and just prior to asking the jury to retire for its de-

liberations, the trial court made the following comments:

"Now, if you believe the testimony of the defendant Harding, you should acquit the defendant Harding.

"However, I call your attention to the fact that, according to the testimony of the defendant Harding, he is a three-time loser. He has been convicted of a felony. Consequently, he is impeached and therefore you have a right under the law to disregard his testimony entirely or to give it such weight as you think it may deserve.

"If you believe the testimony of the Government witness Smart—I call to your attention, also, that the defendant Smart is also a convicted felon and consequently he stands impeached before the jury. You may disregard his testimony in its entirety if you wish to, or you may give it such weight as you think it deserves.

"On the other hand, we have the testimony of the Secret Service Agent. His testimony has never been impeached. You may rely upon his testimony entirely, as he is the only unimpeached witness we have here, who testified as to the possession of the negatives at the time they were, shall I say, discovered in the apartment, or at the time they were given to the Secret Service out in the automobile."

As above noted, Harding, in his testimony, contradicted the salient testimony given by Secret Service Agent Behl. The court was in error in informing the jury that the testimony of the Secret Service Agent had never been impeached. The error was compounded when the court stated that the jury might rely upon such witness's testimony entirely "as he is the only unimpeached witness we have here, * * *."

While we are aware that in its instruction the District Court stated to the jury that the jury was the sole trier of the facts and of the credibility of witnesses, nevertheless, we believe that such instructions did not cure the prejudicial effect of the quoted comments made by the trial judge.

In Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933) the trial judge informed the jury that the defendant's testimony was a lie, "except when he agreed with the Government's testimony", because the defendant wiped his hands during his testimony, following which the trial judge stated:

"Now, that opinion is an opinion of evidence and is not binding on you, and if you don't agree with it, it is your duty to find him not guilty."

In the course of its opinion the Supreme Court stated 289 U.S. at p. 470, 53 S.Ct. at p. 699:

"This privilege of the judge to comment on the facts has its inherent limitations. His discretion is not arbitrary and uncontrolled, but judicial, to be exercised in conformity with the standards governing the judicial office. In commenting upon testimony he may not assume the role of a witness. He may analyze and dissect the evidence, but he may not either distort it or add to it. His privilege of comment in order to give appropriate assistance to the jury is too important to be left without safeguards against abuses. The influence of the trial judge on the jury 'is necessarily and properly of great weight' and 'his lightest word or intimation is received with deference, and may prove controlling.' This Court has accordingly emphasized the duty of the trial judge to use great care that an expression of opinion upon the evidence 'should be so given as not to mislead, and especially that it should not be one-sided';
* * * "

At page 472 of 289 U.S., at page 700 of 53 S.Ct. appears the following:

"Nor do we think that the error was cured by the statement of the trial judge that his opinion of the evidence was not binding on the jury

and that if they did not agree with it they should find the defendant not guilty. His definite and concrete assertion of fact, which he had made with all the persuasiveness of judicial utterance, as to the basis of his opinion, was not withdrawn. His characterization of the manner and testimony of the accused was of a sort most likely to remain firmly lodged in the memory of a jury and to excite a prejudice which would preclude a fair and dispassionate consideration of the evidence." (Citations omitted.)

In our view the quoted comments of the District Court constituted plain error and precluded a fair and dispassionate consideration of the evidence by the jury.

The judgment of conviction is reversed and the cause remanded to the District Court with instructions to grant appellant a new trial.